# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

PETER ALLEN SARRACINO,

      Petitioner,

v.                               No.    CV 16-734 MCA/CG
                                                   CR 95-210 MCA

UNITED STATES OF AMERICA,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Peter Allen Sarracino's *2255 Motion to Vacate Illegal Career Offender Sentence Under* Johnson v. United States (the "Motion"), (CV Doc. 1),[1] filed June 27, 2016; Petitioner's *Brief in Support of Motion to Vacate Illegal Career Offender Sentence Under* Johnson v. United States *(Doc. 1* (the "Supplemental Brief"*)*, (CV Doc. 11), filed April 15, 2017; Respondent United States of America's *Brief in Opposition to Defendant-Petitioner's Motion to Vacate Illegal Career Offender Sentence Under Johnson v. United States* (the "Response"), (CV Doc. 12), filed May 4, 2017; and Petitioner's *Reply Brief in Support of Motion to Vacate Illegal Career Offender Sentence Under* Johnson v. United States *(Doc. 1)* (the "Reply"), (CV Doc. 13), filed May 25, 2017.

Petitioner moves the Court to vacate his sentence and resentence him, arguing his sentence as a "career offender" violates his Constitutional right to due process under the Supreme Court of the United States' decision in *Johnson v. United States*, 135 S. Ct. 2551 (2016). (CV Doc. 1 at 1). After considering the parties' filings and the relevant law, the Court concludes that *Johnson* retroactively applies to the mandatory

---

[1] Citations to "CV Doc. __" refer to documents in case number CV 16-734 MCA/CG. Citations to "CR Doc. __" refer to documents in case number CR 95-210-MCA.

Sentencing Guidelines, but that the sentencing court correctly considered Petitioner a career offender because second degree murder, assault with a dangerous weapon, and voluntary manslaughter are "crimes of violence." The Court therefore **RECOMMENDS** that Petitioner's Motion be **DENIED**.

## I.    Background

On January 16, 1996, a jury found Petitioner guilty of kidnapping in violation of 18 U.S.C. § 1201 and of second-degree murder in violation of 18 U.S.C. § 1111(a). (CR Docs. 96, 97). Petitioner's presentence report ("PSR") concluded Petitioner was a "career offender" based on Petitioner's prior convictions for assault with a dangerous weapon in violation of federal law and voluntary manslaughter in violation of New Mexico law. (CV Doc 1 at 2; CV Doc. 12 at 2).[2] Petitioner ultimately received concurrent life sentences. (CR Doc. 127).

When Petitioner was sentenced, the United States Sentencing Guidelines ("U.S.S.G" or "Guidelines") defined a "career offender" in part as a defendant who had an underlying conviction and at least two prior convictions for "crimes of violence." U.S.S.G. § 4B1.1 (1995). The Guidelines further defined "crime of violence" as any federal or state criminal felony that fell within three clauses: (1) if the offense "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "elements clause"); (2) if the offense is "burglary of a dwelling, arson, or extortion" (the "enumerated offense clause"); or (3) if the offense "otherwise involves

---

[2] Neither party has provided the PSR, but they agree to these facts. The parties disagree, however, on what Petitioner's Sentencing Guidelines range actually was. Petitioner states his range was 360 months to life, (CV Doc. 1 at 2), while Respondent states Petitioner's range was simply life imprisonment and that Petitioner's range would have been life imprisonment even without the career offender enhancement, (CV Doc. 12 at 2). Nonetheless, neither party argues the significance of this discrepancy.

conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). *Id.* § 4B1.2(1)(i)-(ii).

On June 27, 2016, Petitioner filed the instant Motion, arguing his sentence violates his Constitutional rights following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2016). The Supreme Court held in *Johnson* that the residual clause in the Armed Career Criminal Act ("ACCA"), which is identical to the residual clause in § 4B1.2, was unconstitutionally vague and may not be used to impose an increased sentence. *Johnson*, 135 S. Ct. at 2563. Although the Supreme Court recently held that *Johnson* was inapplicable to the advisory Guidelines, Petitioner argues *Johnson* applies to his case because the Guidelines were mandatory when he was sentenced. Finally, Petitioner contends neither his underlying or prior convictions qualify as crimes of violence except under the residual clause. Therefore, he argues, he is entitled to be resentenced without being considered a career offender.

Respondent counters that *Johnson* is inapplicable to either the advisory or mandatory Guidelines. Further, Respondent argues, if *Johnson* applies to the mandatory Guidelines, it only applies prospectively rather than retroactively, so Petitioner is still not entitled to relief. Lastly, Respondent claims that even if *Johnson* applies retroactively to the mandatory Guidelines, voluntary manslaughter and assault with a dangerous weapon are crimes of violence, so Petitioner was properly deemed a career offender.

Thus, the issues before the Court are: whether *Johnson* applies to the mandatory Sentencing Guidelines; whether *Johnson* applies retroactively or prospectively; and

whether Petitioner's crimes are crimes of violence under § 4B1.2 absent the residual clause.

## II.     Analysis

### a.     *Review under 28 U.S.C. § 2255*

28 U.S.C. § 2255 provides that prisoners in federal custody may challenge their sentences if: (1) their sentence was imposed in violation of the United States Constitution or federal law; (2) the sentencing court had no jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized sentence; or (4) the sentence is otherwise subject to collateral review. § 2255(a). Here, Petitioner claims his sentence was imposed in violation of the United States Constitution. If the Court finds that a sentence infringed Petitioner's constitutional rights and is subject to collateral review, the Court must vacate the sentence and discharge, resentence, or correct the sentence as the Court believes appropriate. § 2255(b).

### b.     *Whether* Johnson *applies to the pre-*Booker*, mandatory Guidelines*

The first issue before the Court is whether *Johnson* applies to the mandatory Guidelines. As explained above, the Supreme Court in *Johnson* held that the residual clause of the ACCA is unconstitutionally vague. *Johnson*, 135 S. Ct. 2551, 2557. The ACCA's residual clause "both denies fair notice to defendants and invites arbitrary enforcement from judges." *Id.* The *Johnson* Court discussed the fractured and confusing jurisprudence interpreting the residual clause, stating "this Court's repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause confirm its hopeless indeterminacy." *Id.* at 2558; *see id.* at 2559-60 (discussing lower courts' efforts to make sense of the residual clause).

In *Beckles*, the Supreme Court considered whether *Johnson* applied to the residual clause in § 4B1.2 of the advisory Guidelines. *Beckles*, 137 S. Ct. at 890. The Supreme Court squarely answered "no," holding that the advisory Guidelines are not subject to vagueness challenges. *Id.* In so holding, the *Beckles* Court did not find that the residual clause in § 4B1.2 was clear and unambiguous. Rather, the Court reasoned that, "[b]ecause they merely guide the district courts' discretion, the Guidelines are not amenable to vagueness challenges." *Id.* at 894. Unlike the ACCA, which is a law, the advisory Guidelines "do not implicate the twin concerns underlying vagueness doctrine–providing notice and preventing arbitrary enforcement." *Id.* at 894. First, regarding notice, "even perfectly clear Guidelines could not provide notice to a person who seeks to regulate his conduct" because judges retain broad discretion to increase a defendant's sentence. *Id.* Second, the Guidelines do not invite arbitrary enforcement, they simply "advise sentencing courts how to exercise their discretion within the bounds established by Congress." *Id.* at 895.

However, as the *Beckles* Court acknowledged, the Guidelines were not always advisory. *Id.* at 894. The Guidelines were initially mandatory, and in *United States v. Booker* the Supreme Court held that the mandatory Guidelines violated the Sixth Amendment. 543 U.S. at 233-37. Importantly, the *Booker* Court made clear that the mandatory Guidelines did much more than merely guide or advise the district courts' discretion. First, the *Booker* Court repeatedly emphasized that the mandatory Guidelines circumscribed district judges' discretion: "If the Guidelines as written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences . . . their use would not implicate the Sixth

Amendment." *Id.* at 233. The *Booker* Court stated directly that the "Guidelines as written, however, are not advisory; they are mandatory and binding on all judges." *Id.* at 234; *see also id.* ("In most cases . . . the judge is bound to impose a sentence within the Guidelines range."); *id.* at 235 ("Booker's case illustrates the mandatory nature of the Guidelines."). Second, because they were binding on judges, the Supreme Court "consistently held that the Guidelines ha[d] the force and effect of laws." *Id.* at 234 (citing *Mistretta v. U.S.*, 488 U.S. 361, 391 (1989); *Stinson v. U.S.*, 508 U.S. 36, 42 (1993)). Although judges had limited discretion to deviate from the Guidelines "prescribed sentencing range," that did not avoid a constitutional problem. *Id.* at 234-35.

Considering *Johnson*, *Beckles*, and *Booker*, the Court finds *Johnson* applies to the mandatory Guidelines. The *Beckles* opinion rests almost exclusively on the premises that the advisory Guidelines do not bind the district court's discretion and do not have the force and effect of law. *Beckles*, 137 S. Ct. at 134-35. But *Booker* makes clear that the mandatory Guidelines severely limited judges' discretion and had the force and effect of laws that fix the permissible range of sentences. *Booker*, 543 U.S. at 233-35; *see Alleyne v. U.S.*, 133 S. Ct. 2151, 2160 (stating "the legally prescribed range *is* the penalty affixed to the crime"). Because Petitioner was sentenced pre-*Booker*, *Beckles* is inapplicable to his case. The Court therefore finds that the *Johnson* holding applies to the mandatory Guidelines and Petitioner's sentence.

Respondent's protests to the contrary are unconvincing. First, Respondent argues that because the Guidelines do not establish minimum and maximum sentences they do not have the force and effect of laws. (CV Doc. 12 at 5-6). This argument obscures the pre-*Booker* Guidelines' mandatory effects. The Guidelines were no less

mandatory simply because they mandated a narrower range within broad statutory limits. *See Booker*, 543 U.S. at 233. Respondent also argues that district judges' authority to depart from the Guidelines means they did not "fix the range of permissible sentences." (CV Doc. 12 at 6). However, in *Booker*, "[t]he availability of a departure in specified circumstances [did] not avoid the constitutional issue." *Id.* at 234. Here again, the district courts' limited discretion does not negate the fact that the district judge was "bound to impose a sentence within the Guidelines range." *Id.*; *see Hawkins v. U.S.*, 706 F.3d 820, 822 (7th Cir. 2013) ("Before *Booker*, the guidelines were the practical equivalent of a statute. Departures were permitted on specified grounds, but in that respect the guidelines were no different from statutes, which often specify exceptions.").

Accordingly, for the foregoing reasons, the Court finds that the mandatory Guidelines are subject to vagueness challenges, that *Johnson* applies to the mandatory Guidelines, and that, following *Johnson*, the residual clause of § 4B1.2 is unconstitutionally vague.

 *c. Whether* Johnson*, as applied to the Guidelines, is retroactive or prospective*

The second issue before the Court is whether the ruling in *Johnson* as applied to § 4B1.2(a)(2) is retroactively applicable on collateral review. Petitioner argues that *Johnson* announced a substantive rule that is retroactively applicable on collateral review, such as in this case. Respondent contends that *Johnson* as applied to the Guidelines would operate as a procedural rule. Procedural rules are only applicable if they are "watershed," which Respondent argues *Johnson* would not be.

Generally, "new constitutional rules of criminal procedure" do not apply to cases that were final before the rule was announced. *Teague v. Lane*, 489 U.S. 288, 310

(1989). Two types of new rules, however, apply retroactively on collateral review: "substantive" rules, *Schriro v. Summerlin*, 542 U.S. 348 (2004), and "watershed rules of criminal procedure," *Saffle v. Parks*, 494 U.S. 484 (1990). A substantive rule "alters the range of conduct or the class of persons that the law punishes." *Schriro*, 542 U.S. at 351-352, 353 (citation omitted). Substantive rules accomplish this by "narrow[ing] the scope of a criminal statute by interpreting its terms" or "plac[ing] particular conduct or persons covered by the statute beyond the State's power to punish." *Id.* Substantive rules "apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." *Id.* at 352 (quoting *Bousley v. U.S.*, 523 U.S. 614, 620 (1998)); *see Saffle*, 494 U.S. at 495 (proposed rule not substantive because it "would neither decriminalize a class of conduct nor prohibit the imposition of capital punishment on a particular class of persons").

Procedural rules, on the other hand, "regulate only the *manner of determining* the defendant's culpability." *Schriro*, 542 U.S. at 353. Procedural rules "merely raise the possibility that someone convicted with the use of the invalidated procedure might have been acquitted otherwise." *Id.* at 352. Procedural rules are not normally applied retroactively. *Id.* Retroactivity is conferred only on "watershed" procedural rules, i.e. those rules "implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle*, 494 U.S. at 495. The Supreme Court often cites *Gideon v. Wainwright*, 372 U.S. 335 (1963), which held that criminal defendants have the constitutional right to counsel at trial for serious offenses, as an example of a watershed procedural rule. *Id.*

8

In *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016), the Supreme Court held that *Johnson* announced a substantive rule. First, the Supreme Court reasoned that *Johnson* "changed the substantive reach of the [ACCA], altering 'the range of conduct or the class of persons that the [Act] punishes.'" *Id.* (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353). After Johnson struck down the ACCA's residual clause, "the same person engaging in the same conduct is no longer subject to the [ACCA] and faces at most 10 years in prison," rather than at least 15 years. *Id.* The Supreme Court further reasoned that the *Johnson* ruling could not be procedural because it "had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the [ACCA]." *Id.* Unlike procedural rules, "*Johnson* affected the reach of the underlying statute rather than the judicial procedures by which the statute is applied." *Id.* Therefore, the holding in *Johnson* was a substantive rule that applied retroactively on collateral review. *Id.*

Following these general rules, and in light of *Welch*, applying *Johnson* to § 4B1.2(a)(2) operates as a substantive rule that applies retroactively on collateral review to mandatory Guidelines cases. The *Johnson* Court directly held that "imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2563. As the Supreme Court recognized in *Welch*, *Johnson* "alter[ed] the range of conduct or the class of persons that the law punishes." *Welch*, 136 S. Ct. at 1265 (quoting *Schriro*, 542 U.S. at 351-352, 353 (citation omitted)). *Johnson* narrowed the scope of the ACCA by eliminating the residual clause, thereby "plac[ing] particular conduct or persons covered by the statute beyond the State's power to punish." *Schriro*, 542 U.S. at 351-352, 353 (citation

omitted). Similarly, in pre-*Booker* cases, applying *Johnson* to § 4B1.2 "alters the range of conduct or the class of persons" that the Guidelines punish through a career offender enhancement and places particular conduct outside the scope of the career offender enhancement. *Schriro*, 542 U.S. at 351-352, 353 (citation omitted). A defendant sentenced in reliance on the residual clause "faces a punishment that the law cannot impose upon him." *Id.* The two residual clauses operate identically, especially under the mandatory Guidelines. Therefore, *Johnson* as applied to § 4B1.2 is a substantive rule that must be given retroactive effect on collateral review in mandatory Guidelines cases such as this one.

Respondent argues that applying *Johnson* to the Guidelines would create a procedural rule because the Guidelines do not trigger mandatory minimums like the ACCA does. (CV Doc. 12 at 7). Respondent further argues that although miscalculation of the Guidelines range may be procedural error, it "is not illegal or unlawful as in a case" under the ACCA. *Id.* Finally, Respondent insists that a judge's authority to vary from the Guidelines means a sentencing enhancement is a mere procedural step. *Id.* at 8-9. Simply put, several courts have considered and rejected these exact arguments, opting instead to follow the logic in *Johnson* and *Welch*. *See, e.g.*, *In re Patrick*, 833 F.3d 584, 587-90 (6th Cir. 2016) (holding *Johnson*, as applied to Guidelines, is substantive rather than procedural); *In re Hubbard*, 825 F.3d 225, 233-35 (4th Cir. 2016) (same); *Andrews v. U.S.*, 2016 WL 4734593 at *4-5 (D. Utah Sept. 9, 2016) (unpublished) (same). Here again, the mandatory, binding nature of the pre-*Booker* weighs in favor of finding that *Johnson* applies, as the Guidelines had the "force and effect of laws." *See Golicov v. Lynch*, 837 F.3d 1065, 1074-75 (10th Cir. 2016) (noting

the Tenth Circuit has regularly comingled ACCA, Guidelines, and 18 U.S.C. § 16 precedent "without regard to the textual differences between the various provisions").[3]

   d. _Whether Petitioner's predicate crimes are crimes of violence_

   The last issues before the Court are whether Petitioner's convictions for second degree murder in violation of 18 U.S.C. § 1111(a), assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3), and voluntary manslaughter in violation of N.M. Stat. Ann. § 30-2-3(A) are convictions for crimes of violence without invoking the residual clause. The Court will recite general principles governing its analysis and then address each conviction in turn.

   To determine whether a particular conviction qualifies as a crime of violence under the Guidelines' elements clause, courts "apply a categorical approach that looks only to the words of a statute and judicial interpretations of it, rather than to the conduct of any particular defendant convicted of that crime." _U.S. v. McConnell_, 605 F.3d 822, 825 (10th Cir. 2010); _U.S. v. Ramon Silva_, 608 F.3d 663, 669 (10th Cir. 2010). Under the categorical approach, the court "must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized" by the statute. _Moncrieffe v. Holder_, 133 S. Ct. 1678, 1684 (2013) (quotation and alteration in the original) (quoting _Johnson v. U.S._, 559 U.S. 133 (2010)). However, the "focus on the minimum conduct criminalized . . . is not an invitation to apply 'legal imagination' to the state offense; there

---

[3]  Respondent very briefly argues that _Johnson_ does not apply to Petitioner's Motion and the Motion should be dismissed because it is time-barred under § 2255(f). (CV Doc. 12 at 8-10). Although Respondent frames its argument under § 2255(f), Respondent actually substantively argues that Petitioner's Motion does not rely on a "new rule of constitutional law, made retroactive to cases on collateral review" under § 2255(h)(2), notwithstanding that the Tenth Circuit has already certified Petitioner's Motion under § 2255(h). (CV Doc. 4). As the Court has exhaustively discussed thus far, Petitioner relies on the newly recognized right in _Johnson_ to not have his sentence increased in reliance on the residual clause, which the Supreme Court made retroactive in _Welch. See Johnson_, 135 S. Ct. 2551, 2557; _Welch_, 136 S Ct. at 1263 ("It is undisputed that _Johnson_ announced a new rule.").

must be a 'realistic probability, not a theoretical possibility'" that the crime is not a crime of violence. *Id.* at 1684-85 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

Under the Guidelines' elements clause, an offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1(1)(i). "Physical force" means "violent force–that is, force capable of causing physical pain or injury to another person." *Johnson v. U.S.*, 559 U.S. 133, 140 (2010); *see U.S. v. Armijo*, 651 F.3d 1226, 1231 (noting ACCA analysis applies to the Guidelines). The "slightest offensive touching" does not satisfy the elements clause. *Johnson*, 559 U.S. at 139-40. Force may be "used" against another's person both directly and indirectly. *U.S. v. Castleman*, 134 S. Ct. 1405, 1414-15 (2014) ("That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter."). By requiring "direct" use of force, "one could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." *Id.* at 1415. The Supreme Court rejected that interpretation and the argument that poisoning does not require use of force. *Id.* (explaining that poison's physical force is its effect, not its administration). Although *Castleman* interprets a statute defining "misdemeanor crime of domestic violence," Justice Scalia agreed that "it is impossible to cause bodily injury without using force 'capable of' producing that result" under the ACCA's elements clause. *Id.* at 1416-17 (Scalia, J., concurring in the judgment).

1. *Second Degree Murder in violation of 18 U.S.C. § 1111(a)*

As discussed above, the Guidelines define "career offender" as a defendant with an underlying conviction and at least two prior convictions for "crimes of violence." § 4B1.1. Petitioner's underlying conviction was second degree murder in violation of 18 U.S.C. § 1111(a) ('federal second degree murder"). (CV Doc. 1 at 12-13). Petitioner argues federal second degree murder is not a crime of violence after *Johnson* because it was not an enumerated offense and does not satisfy the elements clause. *Id.* at 12; § 4B1.1(1)(i). Respondent did not respond to Petitioner's arguments regarding federal second degree murder.

Federal law defines murder broadly as "the unlawful killing of a human being with malice aforethought." § 1111(a) (1994). When Petitioner was convicted, first degree murder was

> [e]very murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed.

*Id.* Second degree murder was defined as "any other murder." *Id.* Put differently, second degree murder is a homicide committed with malice aforethought that is not perpetrated by poison, lying in wait, or any other kind of willful, deliberate, or premeditated killing, or otherwise committed in the commission of the enumerated felonies. "Malice aforethought" may be established four ways: (1) intent to kill other than willful, deliberate, or premeditated; (2) intent to do serious bodily injury; (3) a depraved-heart; or (4) the commission of a felony other than those specified as first degree murder. *U.S. v. Pearson*, 203 F.3d 1243, 1271 (10th Cir. 2000).

Petitioner accurately notes that murder was not an enumerated offense in the Guidelines in 1995, though it was listed in the Commentary. Application Note 2, U.S.S.G. § 4B1.2 (1995) ("'Crime of violence' includes murder . . ."). Petitioner is also technically correct that federal second degree murder does not have as an element the use, threatened use, or attempted use of force against the person of another; all that § 1111(a) requires is that the defendant commit a homicide with malice aforethought that is not designated as first degree murder.  However, Petitioner does no more than leave it to the Court's "legal imagination" to conceive of how second degree murder may be committed without violent physical force against the person of another. Petitioner has not cited any case in which a defendant was convicted of federal second degree murder without the use of force. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (providing a defendant shows a "realistic probability" instead of a "theoretical possibility" by citing his own or other cases). This is insufficient to show that federal second degree murder is not a crime of violence.

Further, the Fourth Circuit Court of Appeals and the District Court for the District of Utah have considered whether federal second degree murder is a crime of violence and resoundingly answered affirmatively. *See In re Irby*, __ F.3d. __, 2017 WL 2366996 (4th Cir. June 1, 2017); *U.S. v. Checora*, 155 F.Supp.3d 1192 (D. Utah 2015). In *Irby*, the Fourth Circuit held that federal second degree retaliatory murder is a crime of violence under the elements clause "because unlawfully killing another human being requires the use of force 'capable of causing physical pain or injury to another person.'" *Irby*, 2017 WL 2366996 at *4 (quoting *U.S. v. Luskin*, 926 F.2d 372 (4th Cir. 1991)). The Fourth Circuit reasoned that it would be absurd to consider less heinous crimes like

robbery and burglary crimes of violence, but not murder. *Id.* at *5. In *Checora*, the court similarly found that federal second degree murder is a crime of violence under the elements clause because "it is impossible to cause death without applying physical force." *Checora*, 155 F.Supp.3d at 1198; a*ccord U.S. v. Moreno-Aguilar*, 198 F.Supp.3d 548, 553-54 (holding Maryland murder a crime of violence because murder requires force and it would be absurd to consider it not a crime of violence); *but see U.S. v. Watts*, 2017 WL 411341 (D. Kan. Jan. 31, 2017) (unpublished) (holding Missouri second degree felony murder not a crime of violence because it may be committed in the commission of nonviolent felonies). Accordingly, the Court finds second degree murder in violation of § 1111(a) is a crime of violence under the elements clause of § 4B1.2.

Petitioner cites *United States v. Perez-Vargas*, 414 F.3d 1282, 1286 (10th Cir. 2005), for examples of how a defendant could hypothetically commit second degree murder without "using" force. *Perez-Vargas* is not a federal second degree murder case; rather, the Tenth Circuit posed three hypothetical examples of how someone could commit Colorado third degree assault using force indirectly: firing a gun into the air, placing a barrier in front of someone's car, and exposing someone to dangerous chemicals. *Id.* Since *Castleman*, several courts have rejected the argument that force must be "used" directly. *See, e.g.*, *U.S. v. Rice*, 813 F.3d 704, 706 (8th Cir. 2016) (following *Castleman* rather than *Perez-Vargas*); *U.S. v. Pikyavit*, 2017 WL 1288559 at *4-7 (D. Utah Apr. 6, 2017) (unpublished), *appeal docketed*, No. 17-4068 (10th Cir. May 1, 2017) (finding *Castleman* abrogated *Perez-Vargas*); *U.S. v. Breshers*, 2017 WL 2378349 at *2 n.2 (D. Kan. June 1, 2017) (unpublished) (agreeing *Castleman* limited

*Perez-Vargas*'s holding). The Court joins others in following *Castleman* rather than *Perez-Vargas*.

2. <u>*Assault with a Dangerous Weapon in violation of 18 U.S.C. § 113(a)(3)*</u>

Turning to Petitioner's prior convictions, Petitioner first contends that assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3) is not a crime of violence because it does not require the use of "violent force" to commit. (CV Doc. 1 at 10-11). Respondent counters that assault with a dangerous weapon is a crime of violence under the Guidelines' Commentary and the elements clause. (CV Doc. 12 at 17-21).

A conviction for violating § 113(a)(3) necessitates proof of (1) an assault (2) with a dangerous weapon, and (3) intent to cause bodily harm. *U.S. v. Duran*, 127 F.3d 911, 915 (10th Cir. 1997). Conviction under § 113(a)(3) does not require proof of any actual physical contact, *id.*, but it does require specific intent to do bodily harm, *U.S. v. Abeyta*, 27 F.3d 470, 474 (10th Cir. 1994). Although the statute does not define "assault," courts presume Congress intended to incorporate assault's common law definition. *Brundage v. U.S.*, 365 F.3d 616, 619 (10th Cir. 1966). "Assault" therefore includes an attempted battery or "'placing another in reasonable apprehension of a battery.'" *U.S. v. Gauvin*, 173 F.3d 798, 802 (10th Cir. 1999) (quoting Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law*, § 7.16 (1986)).

The Tenth Circuit has held that both attempted-battery and "apprehension causing" assault with a deadly weapon are crimes of violence. *See U.S. v. Taylor*, 843 F.3d 1215 (10th Cir. 2016) (finding Oklahoma assault and battery with a dangerous weapon a crime of violence for purposes of § 4B1.2); *U.S. v. Mitchell*, 653 Fed. Appx. 639 (10th Cir. 2016) (unpubslished) (holding Oklahoma assault with a dangerous

weapon a crime of violence); *U.S. v. Ramon Silva*, 608 F.3d 663, 674 (10th Cir. 2010) (holding New Mexico assault with a deadly weapon is a violent felony under the ACCA); *U.S. v. Maldonado-Palma*, 839 F.3d 1244, 1250-51 (10th Cir. 2016) (extending *Ramon Silva* to Guidelines § 2L1.2). Regarding apprehension causing assault, the Tenth Circuit reasoned "[t]hreatening or engaging in menacing conduct toward a victim, with a weapon capable of producing death or great bodily harm, threatens the use of '*violent* force' because in committing such an act, the aggressor communicates to his victim that he will potentially use '*violent* force' against the victim in the near-future." *Ramon Silva*, 608 F.3d at 670. Further, apprehension causing assault "always has the potential to lead to '*violent* force.'" *Id.* As for attempted-battery assault, "an attempted-battery assault contains as an element the *attempted* use of force, not only the threatened use force. With the addition of a deadly or dangerous weapon, therefore, an attempted-battery assault is a crime of violence under the elements clause." *Mitchell*, 653 Fed. Appx. at 645.

Although *Mitchell* involved an Oklahoma statute, rather than § 113(a)(3), the Court sees no reason why the same analysis and conclusion should not apply to § 113(a)(3). The Oklahoma statute at issue in *Mitchell* criminalized "either an attempted-battery assault or an apprehension-causing assault–with a weapon capable of causing great bodily harm." *Id.* As explained above, so too does § 113(a)(3). Thus, the Court finds that § 113(a)(3) is a crime of violence under the elements clause.

            *3.  Voluntary Manslaughter in violation of N.M. Stat. Ann. § 30-2-3(A).*

Finally, Petitioner claims that voluntary manslaughter in New Mexico is not a crime of violence because it does not have the use of force as an element. (CV Doc. 1

at 6-9). Petitioner also argues that voluntary manslaughter may be committed with a reckless *mens rea*, which disqualifies voluntary manslaughter as a crime of violence. *Id.* at 8-9). Respondent counters that New Mexico manslaughter is a crime of violence under both the elements clause and under the Commentary to Guidelines § 4B1.2. (CV Doc. 19 at 18-20).

In order to qualify as a crime of violence under the elements clause, a statute must prohibit more than negligent, inadvertent, or accidental conduct. *Leocal v. Ashcroft*, 543 U.S. 1, 9-10 (2004) (interpreting the elements clause of 18 U.S.C. § 16(a)). The Tenth Circuit has interpreted *Leocal* to mean that a statute with a *mens rea* of recklessness does not qualify as a crime of violence under the elements clause. *See U.S. v. Zuniga-Soto*, 527 F.3d 1110, 1123-24 (10th Cir. 2008) (interpreting *Leocal* and Guidelines § 2L1.2). The Tenth Circuit and several other Circuit Courts of Appeals agree that crimes requiring only a *mens rea* of recklessness, including homicides, are not crimes of violence. *See, e.g.*, *U.S. v. Duran*, 696 F.3d 1089 (10th Cir. 2012) (holding Texas aggravated assault not a crime of violence under § 4B1.2 because it could be committed with reckless *mens rea*); *U.S. v. Woods*, 576 F.3d 400, 410-11 (7th Cir. 2009) (holding Illinois involuntary manslaughter not a crime of violence under § 4B1.2(a) because it may be committed with reckless *mens rea*) *U.S. v. Torres-Villalobos*, 487 F.3d 607, 616 (8th Cir. 2007) (holding Minnesota second-degree manslaughter not an "aggravated felony"); *U.S. v. Portela*, 469 F.3d 496, 499 (6th Cir. 2006) (holding vehicular homicide not a crime of violence for purposes of 18 U.S.C. § 16(b)); *U.S. v. Culbertson*, 389 Fed. Appx. 515, 519-20 (6th Cir. 2010) (unpublished) (holding Michigan

vehicular manslaughter not a violent felony under the ACCA because it requires only gross negligence or recklessness).[4]

Specifically, the Tenth Circuit has held that Colorado's version of manslaughter was not a crime of violence under § 4B1.2 because it "involves only reckless conduct." *U.S. v. Armijo*, 651 F.3d 1226, 1237 (10th Cir. 2011). In Colorado, a defendant is guilty of manslaughter if they "recklessly cause the death of another person." Colo. Stat. Ann. § 18-3-104(1)(a). Colorado further requires showing a defendant consciously disregarded a substantial and unjustifiable risk that he would cause the death of another. *People v. Hall*, 999 P.2d 207, 217 (Colo. 2000). The Tenth Circuit concluded this version of manslaughter is not a crime of violence, holding "only those versions of manslaughter that involve intentional or purposeful behavior qualify as crimes of violence for purposes of § 4B1.2(a)." *Armijo*, 651 F.3d at 1237. The court clarified in a footnote that it intended its holding to apply to "voluntary manslaughter." *Id.* at 1236 n.12.

---

[4] The Court notes a recent line of Supreme Court cases potentially implying that reckless intent satisfies the elements clause of § 4B1.2. *See Voisine v. U.S.*, 136 S. Ct. 2272 (2016) (holding recklessness suffices to commit a misdemeanor crime of domestic violence); *U.S. v. Castleman*, 134 S. Ct. 1405 (2014) (holding "force" includes "offensive touching"). These cases, however, are inapposite to Guidelines cases, as they interpret a significantly different law. *Voisine* and *Castleman* interpret 18 U.S.C. § 922(g)(9), which prohibits individuals convicted of a "misdemeanor crime of violence" from possessing a firearm. "Misdemeanor crime of violence" means, in part, an offense that "has, as an element, the use or attempted use of physical force." 18 U.S.C. § 921(a)(33)(A)(ii). In *Castleman*, the Supreme Court interpreted that definition to include "offensive touching," and in *Voisine*, the Court held that force may be recklessly used. *Castleman*, 134 S. Ct. at 1410; *Voisine*, 136 S. Ct. 2280-82. But *Castleman* noted the differences between "misdemeanor crime of violence" and "violent felony" in the ACCA. *Castleman*, 134 S. Ct. at 1410-13. While a misdemeanor crime of violence may be committed by "offensive touching," offensive touching is insufficient to commit a violent felony under the ACCA. *Id.* at 1410; *Johnson*, 559 U.S. at 139-40. Thus, because the ACCA requires more violent conduct than §922(g)(9), the ACCA and Guidelines arguably require more than reckless intent. *See Armijo*, 651 F.3d at 1231 (noting ACCA analysis applies to the Guidelines). Importantly, the Tenth Circuit has recognized this distinction between the two lines of cases, *U.S. v. Harris*, 844 F.3d 1260, 1264-65 (10th Cir. 2017), and the "prevailing position" among district courts is that *Voisine* does not apply to the ACCA. *See U.S. v. Brown*, __ F.Supp.3d __, 2017 WL 1383640 at *8 (D.D.C. Apr. 12, 2017) (collecting cases).

Turning to the statute at issue here, New Mexico defines manslaughter as "the unlawful killing of a human being without malice." N.M. Stat. Ann. § 30-2-3 (2017). Petitioner's crime, voluntary manslaughter, is further defined as "manslaughter committed upon a sudden quarrel or in the heat of passion." § 30-2-3(A). In order to be found guilty of violating § 30-2-3(A), the crime must have taken place in New Mexico and the defendant must have: killed the victim; known "that his acts created a strong probability of death or great bodily harm to the victim or third person;" and acted as a result of sufficient provocation. U.J.I. 14-220 NMRA.

In contrast with Colorado manslaughter, New Mexico case law suggests voluntary manslaughter must be committed intentionally and cannot be committed accidentally. *See State v. Lopez*, 1968-NMSC-092, ¶ 14, 79 N.M. 282, 442 P.2d 594 ("That an accidental killing will not support a conviction of voluntary manslaughter goes without saying."); *State v. Pruett*, 1921-NMSC-110, 27 N.M. 576, 203 P. 840 (holding instruction on involuntary manslaughter was error where evidence indicated homicide was intentional). Voluntary manslaughter is typically a general intent crime, *State v. Jernigan*, 2006-NMSC-003, ¶ 18, 139 N.M. 1, 127 P.3d 537, wherein the defendant must at least "intend[] to cause the harmful act," *State v. Abeyta*, 1995-NMSC-051, ¶ 24, 120 N.M. 233, 901 P.2d 164.

Further, New Mexico courts have consistently described reckless manslaughter as involuntary rather than voluntary. *See State v. Harris*, 1937-NMSC-046, ¶ 6, 41 N.M. 426, 70 P.2d 757 (affirming involuntary manslaughter conviction where evidence showed defendant acted "so reckless, wanton, and willful as to show an utter disregard for the safety of others"). The New Mexico Court of Appeals has defined "criminal

negligence," the *mens rea* of involuntary manslaughter, as "reckless, wanton or willful conduct." *State v. Grubbs*, 1973-NMCA-096, ¶ 5, 85 N.M. 365, 512 P.2d 693; *see* N.M. Stat. Ann. § 30-2-3(b). More recently, the New Mexico Supreme Court declared "[t]he showing of criminal negligence required for involuntary manslaughter . . . includes the concept of recklessness." *State v. Henley*, 2010-NMSC-039, ¶ 16, 148 N.M. 359, 237 P.3d 103.

Secondary sources bolster the conclusion that voluntary manslaughter cannot be recklessly committed in New Mexico. According to one author, "[r]eckless killings can fall within three degrees of criminal homicide–depraved mind first degree murder, second degree murder, and involuntary manslaughter." Leo M. Romero, *Unintentional Homicides Caused by Risk-Creating Conduct: Problems in Distinguishing Between Depraved Mind Murder, Second Degree Murder, Involuntary Manslaughter, and Noncriminal Homicide in New Mexico*, 20 N.M. L. Rev. 55, 58 (1990). Notably absent is voluntary manslaughter. The author further explains that, at common law, "[r]eckless or grossly negligent conduct creating an unreasonable risk of death could serve as the basis for involuntary manslaughter," not voluntary manslaughter. *Id.* at 71. Finally, the author postulates that if a homicide "was reckless with respect to the result of death, it is involuntary manslaughter." Leo M. Romero, *New Mexico Mens Rea Doctrines and the Uniform Criminal Jury Instructions: The Need for Revision*, 8 N.M. L. Rev. 127, 130 (1978).

Given the preceding authority, the Court must conclude that New Mexico's version of voluntary manslaughter is a crime of violence under the elements clause of § 4B1.2. Although Petitioner is correct that reckless manslaughter is not a crime of

violence, New Mexico considers reckless manslaughter involuntary rather than voluntary. New Mexico's manslaughter statute does not define the *mens rea* necessary to commit voluntary manslaughter, but case law, jury instructions, and scholarship show that voluntary manslaughter requires more than recklessness–it must be committed intentionally.

Further, similar to the analysis for federal second degree murder, voluntary manslaughter must also be a crime of violence because it necessarily involves the use of violent physical force. Intentional homicide, even with adequate provocation, necessarily involves the use of force that is violent enough to kill. Again, Petitioner has not cited any New Mexico case where a defendant was convicted of voluntary manslaughter without using force. Accordingly, the Court finds that New Mexico voluntary manslaughter is a crime of violence under the elements clause of § 4B1.2.

## III.    Recommendation

For the foregoing reasons, the Court finds that *Johnson* applies retroactively to the residual clause in the mandatory Guidelines' § 4B1.2, but that Petitioner was nevertheless correctly identified as a career offender because his underlying and prior convictions were for crimes of violence under the Guidelines' elements clause. Consequently, Petitioner's sentence does not violate his constitutional rights, and Petitioner is ineligible for relief under § 2255.

**IT IS THEREFORE RECOMMENDED** that Petitioner's *2255 Motion to Vacate*

*Illegal Career Offender Sentence Under* Johnson v. United States, (CV Doc. 1), be

**DENIED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE